# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

# BECKLEY DIVISION

| | |
|---|---|
| **PEGGY S. GOINS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )   CIVIL ACTION NO. 5:10-00977 |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits (DIB), under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. This case is presently pending before the Court on the parties' cross-Motions for Judgment on the Pleadings. (Document Nos. 10 and 13.) Both parties have consented in writing to a decision by the United States Magistrate Judge. (Document Nos. 5 and 6.)

The Plaintiff, Peggy S. Goins, (hereinafter referred to as "Claimant"), filed an application for DIB on December 26, 2007 (protective filing date), alleging disability as of July 30, 2005, due to Meniere's Disease, vertigo, and daily migraines. (Tr. at 12, 102-04, 126.) The claim was denied initially and on reconsideration. (Tr. at 54-56, 60-62.) On July 8, 2008, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 64.) The hearing was held on July 14, 2009, before the Honorable Theodore Burock. (Tr. at 27-49.) By decision dated October 16, 2009, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 12-26.) The ALJ's decision became the final decision of the Commissioner on July 9, 2010, when the Appeals Council denied Claimant's request for review. (Tr. at 1-5.) On August 2, 2010, Claimant brought the present action seeking

judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2009). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2009). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings,

2

has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since June 30, 2007, her alleged onset date. (Tr. at 14, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from "hearing impairment/vertigo/vision, irritable bowel syndrome, hiatal hernia, headaches, depression, anxiety, and borderline IQ," which were severe impairments. (Tr. at 14, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 16, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity for medium exertional work as follows:

> [C]laimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c). The claimant is limited to routine repetitive tasks. She can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She should have no concentrated exposure to extreme cold and heat, vibration, fumes, odors, dusts or gases, poor ventilation and hazards. She can never climb ladders, ropes, or scaffolds. She would be limited to noisy work environment.

(Tr. at 18, Finding No. 5.) At step four, the ALJ found that Claimant had no past relevant work. (Tr. at 23, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as a cleaner, hospital food service worker, and laundry attendant, at the medium level of exertion. (Tr. at 24, Finding No. 10.) On this basis, benefits were denied. (Tr. at 25, Finding No. 11.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on March 23, 1961, and was 48 years old at the time of the administrative hearing, July 14, 2009. (Tr. at 23, 31, 102.) Claimant had at least a high school education, having obtained her Generalized Equivalency Diploma, and was able to communicate in English. (Tr. at 23, 32, 125, 131.) In the past, she worked as clerk in 1990. (Tr. at 23, 44, 127-28.)

Claimant's Challenges to the Commissioner's Decision

Claimant first alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in failing to consider her diagnoses of Meniere's Disease and Vestibular Dysfunction and Listing 2.07 associated with these conditions. (Document No. 10 at 6-8.) Claimant asserts that the ALJ erred in finding that there was lack of proof of Meniere's disease because a specialist, Dr. Blaine, diagnosed the disease upon objective testing. (Id. at 7.) Contrary to the ALJ's finding, Plaintiff contends that there was proof of Meniere's disease. (Id.) But because the

4

ALJ failed to acknowledge the diagnosis, he also failed to consider whether Claimant met Listing 2.07. (Id. at 8.) Claimant asserts that considering the number of doctor and emergency room visits, together with Dr. Blaine's diagnosis, her complaints were credible. (Id.)

In response, the Commissioner asserts that there is no merit to Claimant's argument and emphasizes that she has not received a definitive diagnosis of Meniere's disease. (Document No. 13 at 9-10.) The Commissioner notes that in January, 2005, Dr. Westerkamm diagnosed possible Meniere's disease; that in June, 2005, the state agency physician opined that there was no evidence of Meniere's disease established in the record; and that in August, 2008, one year after her insured status expired, Dr. Blaine diagnosed questionable mixed diagnosis of Meniere's disease and vertigo associated with migraine headaches. (Id. at 9.) Regarding Claimant's credibility, the Commissioner asserts that the record contained numerous notations from Dr. Blaine that suggested Claimant was malingering. (Id. at 10.) The Commissioner notes that Claimant did not seek treatment for mental complaints until after her insured status expired. (Id. at 11.) Consequently, Claimant cannot be found disabled as a result of her mental complaints. (Id.) Consequently, the Commissioner asserts that Claimant's argument is without merit. (Id. at 10.)

Claimant next asserts that the ALJ's decision is not supported by substantial evidence because the ALJ failed to give great weight to the opinions of Dr. Blaine, her treating physician. (Document No. 10 at 9.) Claimant contends that Dr. Blaine treated her throughout the relevant period and found that she suffered from Meniere's disease. (Id.) The ALJ therefore, should have acknowledged Dr. Blaine's diagnosis. (Id.) In response, the Commissioner asserts that although Dr. Blaine was Claimant's treating physician, he noted that Claimant exhibited symptoms of malingering. (Document No. 13 at 10-11.) The state agency reviewing physician opined that prior to June 30, 2007, Claimant's last insured date, that she was not disabled. (Id.)

5

Finally, Claimant asserts that the ALJ's decision is not supported by substantial evidence because he failed to consider the combined effect of all her impairments. (Document No. 10 at 9-10.) Claimant asserts that the ALJ failed to make findings regarding the intensity and severity of her pain on her ability to perform activities. (Id. at 9.) She points out that her back injury and frequent migraine headaches caused pain, which the ALJ did not consider. (Id.) The Commissioner asserts in response that the ALJ considered all of Claimant's impairments and imposed extensive restrictions on her ability to work. (Document No. 13 at 11.) Consequently, the Commissioner asserts that the ALJ considered the combination of Claimant's impairments and that Claimant's argument is without merit. (Id. at 10-11.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Analysis.

1. Meniere's Disease as a Severe Impairment.

Claimant first alleges that the ALJ erred in failing to find Meniere's disease as a severe impairment, and consequently, failed to consider whether the disease met Listing 2.07. (Document No. 10 at 6-8.) To be deemed disabled, a claimant must have an impairment or combination of impairments which is severe, meaning that it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c); 416.920(c) (2009). Basic work activities are the abilities and aptitudes necessary to do most jobs, including: physical functions such as sitting and standing; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. Id.; §§ 404.1521(b)(1)-(6);

6

416.921(b)(1)-(6). Conversely, "[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (emphasis in original); see also SSR 85-28 (An impairment is considered not severe "when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered."). An inconsistency between a claimant's allegations about the severity of an impairment and the treatment sought is probative of credibility. See Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994). As discussed above, the determination whether a claimant has a severe impairment is made at the second step of the sequential analysis.

The medical evidence of record reveals that Dr. Westerkamm, M.D., an ear, nose, and throat specialist, examined Claimant on January 7, 2005, for complaints of chronic lightheadedness, right-sided hearing loss and fullness, and a five year history of vertigo. (Tr. at 213-14.) Dr. Westerkamm diagnosed possible Meniere's disease or a chronic viral labyrinthitis, and referred Claimant for balance and MRI testing. (Tr. at 214.) On January 27, 2005, Dr. Wallace, an eye and ear specialist, examined Claimant and conducted an ENG, which revealed left ear weakness on caloric testing. (Tr. at 218.) Dr. Wallace referred Claimant to Dr. Othman, M.D., a neurologist, for consultation. (Tr. at 217.) On May 3, 2006, Claimant was examined by Dr. Othman for complaints of headaches and vertigo over the past six to eight weeks. (Tr. at 231-32.) Physical exam of Claimant's ears was normal, as was her neurological exam. (Tr. at 232.) Dr. Othman noted that from a neurological standpoint, Claimant's exam was normal with the exception of a balance problem. (Id.) He recommended further evaluation by CT scan or MRI of the brain due to her complaints of headaches.

(Id.)

On March 4, 2008, Dr. Gomez, M.D., a state agency reviewing physician, opined that prior to Claimant's date last insured, June 30, 2007, she had a residual functional capacity for medium exertional work with occasional limitations in balancing and climbing ladders, ropes, or scaffolds; and avoiding concentrated exposure to vibration and hazards. (Tr. at 237-45.) Dr. Gomez noted that there was "no documentation of diagnosis of Meniere's disease as alleged." (Tr. at 242.) On June 21, 2008, Dr. Boukhemis, M.D., another state agency reviewing physician, opined that prior to Claimant's date last insured, June 30, 2007, Claimant had a residual functional capacity for medium exertional work with occasional postural limitations and an avoidance of concentrated exposure to temperature extremes, vibration, hazards, and fumes, odors, dusts, gases, and poor ventilation. (Tr. at 246-54.) Dr. Boukhemis noted that there was "[n]o evidence of true Meniere's disease." (Tr. at 253.)

Claimant initiated treatment with Dr. A. James Payne, Jr., M.D., an ear, nose, and throat specialist on November 1, 2007. (Tr. at 296.) Dr. Payne diagnosed vertigo and noted that Claimant had strong symptoms related to migraines and according to history, related to Meniere's. (Tr. at 296.) VNG testing on November 27, 2007, was abnormal and revealed a right peripheral lesion due to abnormal ECOG and hearing test, most likely due to Meniere's. (Tr. at 298.) On November 29, 2007, Dr. David A. Blaine, M.D., Dr. Payne's associate, noted that vestibular testing, revealed an abnormal ECOG on the right. (Tr. at 295.) On December 20, 2007, Dr. Blaine noted that in response to Claimant's question as to whether her condition caused her to be disabled, he explained "that these problems would have to be dealt with through Disability & Determination Services and that [he] was not able to elaborate on this being a disability at this point." (Tr. at 294.)

In a letter to Claimant's attorney, dated January 10, 2008, Dr. Blaine noted that Claimant was

diagnosed with Meniere's disease by Dr. Wallace. (Tr. at 287.) He further noted that recent ECOG and balance testing "confirmed the presence of criteria that we would include in the diagnosis of Meniere's disease." (Id.) On June 19, 2008, Dr. Blaine noted that on romberg testing, Claimant almost purposefully fell or stumbled to the left but was able to walk and stand on one foot without any problem. (Tr. at 290.) Dr. Blaine noted on September 11, 2008, that "it is unclear if it is just Meniere's versus migraine." (Tr. at 292.) Dr. Blaine noted on December 4, 2008, that there appeared to have been "more malingering occurring than actual disease," based on Claimant's stumbling quickly to the left, which appeared to have been over exaggerated." (Tr. at 293.)

In his decision, the ALJ found that Claimant's hearing impairment, vertigo, vision, and headaches were severe impairments. (Tr. at 15-16.) Regarding Meniere's disease, the ALJ found that "there was no evidence of true Meniere's disease in the medical evidence of record." Notwithstanding Dr. Blaine's letter dated January 10, 2008, regarding Dr. Wallace's diagnosis, the evidence of record did not contain a definitive diagnosis of Meniere's disease prior to Claimant's date last insured, June 30, 2007. Nevertheless, the ALJ considered Claimant's symptoms of Meniere's disease and found that they constituted severe impairments. Regarding Listing 2.07, the ALJ did not specifically discuss that section but considered Claimant's hearing impairment and vertigo under section 2.00 of the Listing of Impairments, collectively. The Court finds that any error the ALJ may have committed in not considering specifically Listing 2.07 is harmless because the evidence of record prior to June 30, 2007, did not demonstrate hearing loss established by audiometry prior to the date last insured.[1] The

---

[1] Listing 2.07 provides:

*Disturbance of labyrinthine-vestibular function (including Meniere's disease)*, characterized by a history of frequent attacks of balance disturbance, tinnitus, and progressive loss of hearing. With both A and B:
    A. Disturbed function of vestibular labyrinth demonstrated by caloric or other

audiological evaluation conducted on January 27, 2005, was within normal limits bilaterally. (Tr. at 227.) Consequently, remand for specific consideration of Claimant's impairment under Listing 2.07 would be futile, in that it would not change the ALJ's decision.

2. Pain and Credibility Assessment.

Claimant next alleges that the ALJ erred in assessing her credibility. (Document No. 10 at 8-9.) A two-step process is used to determine whether a claimant is disabled by pain or other symptoms. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain or symptoms alleged. 20 C.F.R. §§ 404.1529(b) and 416.929(b) (2009); SSR 96-7p; See also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). If such an impairment is established, then the intensity and persistence of the pain or symptoms and the extent to which they affect a claimant's ability to work must be evaluated. Id. at 595. When a claimant proves the existence of a medical condition that could cause the alleged pain or symptoms, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative. Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (2009). Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your

---

vestibular tests; and
    B. Hearing loss established by audiometry.

10

prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . . Factors relevant to your symptoms, such as pain, which we will consider include:

> (i) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (2009).

SSR 96-7p repeats the two-step regulatory provisions:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting

> effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996). SSR 96-7p specifically requires consideration of the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" in assessing the credibility of an individual's statements. Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the Regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

The ALJ noted the requirements of the applicable law and Regulations with regard to assessing pain, symptoms, and credibility. (Tr. at 18-23.) The ALJ found at the first step of the analysis that Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. at 20.) Thus, the ALJ made an adequate threshold finding and proceeded to consider the intensity and persistence of Claimant's alleged symptoms and the extent to which they affected Claimant's ability to work. (Tr. at 20-23.) At the second step of the analysis, the ALJ concluded that "[C]laimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. at 20.)

In his decision, the ALJ found that Claimant was not credible due to inconsistencies in the record and due to the lack of objective medical evidence. (Tr. at 20.) The ALJ summarized the inconsistencies in his decision and also noted that there was no actual diagnosis of Meniere's disease. (Tr. at 20-21.) Additionally, as noted above, Dr. Blaine noted evidence of malingering and inconsistent statements. The Court finds that the ALJ properly considered the factors set forth in the Regulations in assessing Claimant's credibility and that his finding that Claimant was not credible is supported by substantial evidence.

3. Treating Physician Opinion.

Claimant next alleges that the ALJ erred in failing to give significant weight to the findings of Dr. Blaine, Claimant's treating physician. (Document No. 10 at 9-10.) "RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record," including " the effects of treatment" and the "limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment,

13

duration, disruption to routine, side effects of medication." Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2009). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

Opinions on a claimant's Residual Functional Capacity are issues that are reserved to the Commissioner. The Regulations state that:

> We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to subpart P of part 404 of this chapter, your residual functional capacity . . . or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner.

See 20 C.F.R. § 416.927(e)(2) (2009).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physicians' opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

The Regulations state that opinions on these issues are not medical opinions as described in the Regulation dealing with opinion evidence (20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2)); rather, they are opinions on issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e) and

14

416.927(e). For that reason, the Regulations make clear that "[w]e will not give any special significance to the source of an opinion on issues reserved to the Commissioner. . . ." Id. §§ 404.1527(e)(3) and 416.927(e)(3). The Regulations further provide that "[f]or cases at the Administrative Law Judge hearing or Appeals Council level, the responsibility for deciding your residual functional capacity rests with the Administrative Law Judge or Appeals Council." See 20 C.F.R. §§ 404.1545 and 416.946 (2009). However, the adjudicator must still apply the applicable factors in 20 C.F.R. § 416.927(d) when evaluating the opinions of medical sources on issues reserved to the Commissioner. See Social Securing Ruling ("SSR") 96-5p, 61 FR 34471, 34473 (1996).

Social Security Ruling 96-5p makes a distinction between an RFC assessment, which is "the adjudicator's ultimate finding of 'what you can still do despite your limitations,'" and a "'medical source statement,' which is a 'statement about what you can still do despite your impairment(s)' made by an individual's medical source and based on that source's own medical findings." Id. SSR 96-5p states that "[a] medical source statement is evidence that is submitted to SSA by an individual's medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s)." Adjudicators "must weigh medical source statements under the rules set out in 20 C.F.R. § 416.927, providing appropriate explanations for accepting or rejecting such opinions." Id. at 34474.

Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2009). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of

15

determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2) and 416.927(d)(2).

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(I) and 416.927(d)(2)(I) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4) and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty). Unless the ALJ gives controlling weight to a treating source's opinion, the ALJ must explain in the decision the weight given to the opinions of state agency psychological consultants. 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii) (2009). The ALJ, however, is not bound by any findings made by state agency medical or psychological consultants and the ultimate determination of disability is reserved to the ALJ. Id. §§ 404.1527(f)(2)(I) and 416.927(f)(2)(I).

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2009). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques

and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2009). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2009). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the Court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6).

Dr. Blaine diagnosed Meniere's disease, but his diagnosis was made subsequent to Claimant's date last insured. The ALJ therefore, was not able to give Dr. Blaine's diagnosis significant weight in the absence of a relation back to the relevant period. The opinions of the state agency reviewing physicians were consistent with the evidence of record prior to Claimant's date last insured, and therefore, the ALJ's assigning greater weight to the opinions of the state agency physicians is supported by substantial evidence.

Accordingly, based on the foregoing, the undersigned finds that the ALJ's decision to not give significant weight to Dr. Blaine's findings is supported by substantial evidence.

4. Combined Effect of Impairments.

Finally, Claimant alleges that the ALJ erred in failing to consider the combined effect of her impairments. (Document No. 10 at 8-9.) The Social Security Regulations provide as follows:

> In determining whether your physical or mental impairment or impairments are of a

17

> sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.

20 C.F.R. § 416.923 (2009). Where there is a combination of impairments, the issue "is not only the existence of the problems, but also the degree of their severity, and whether, together, they impaired the claimant's ability to engage in substantial gainful activity." Oppenheim v. Finch, 495 F.2d 396, 398 (4th Cir. 1974). The ailments should not be fractionalized and considered in isolation, but considered in combination to determine the impact on the ability of the claimant to engage in substantial gainful activity. Id. The cumulative or synergistic effect that the various impairments have on claimant's ability to work must be analyzed. DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983.)

Claimant asserts that the ALJ failed to consider the limitations from her vertigo and migraines and the impact they had on her ability to work. (Document No. 10 at 9.) The undersigned first notes that the ALJ stated in his decision that he considered all the evidence of record and that Claimant did "not have an impairment or combination of impairments that met or medically equaled one of the listed impairments." (Tr. at 16.) Second, the ALJ's decision reveals that he considered Claimant's vertigo and migraines individually and in combination with her other impairments. (Tr. at 15-16, 19-22.) In assessing Claimant's RFC, the ALJ set forth several restrictions including postural and environmental limitations. Claimant has failed to demonstrate how the combination of her vertigo and migraines rendered her disabled. She has not established any particular limitation resulting from the combined effect of Claimant's vertigo and migraines and the remainder of her impairments. Accordingly, the undersigned finds that the ALJ properly considered Claimant's impairments in combination and that his decision is supported by the substantial evidence of record

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings (Document No. 10.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Document No. 13.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED**, and this matter is **DISMISSED** from the docket of this Court..

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: September 29, 2011.

R. Clarke VanDervort
United States Magistrate Judge